UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES HART and KRISTEN HART,

                    Plaintiffs,                        Case No. 1:23-cv-12284

v.                                            Honorable Thomas L. Ludington
                                            United States District Judge

TOWNSHIP OF PRESQUE ISLE,

                    Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs James and Kristen Hart decided to build a retirement home on Lake Huron in Presque Isle, Michigan. Presque Isle's Zoning Administrator, Stephen Lang, issued Plaintiffs a permit in 2020, and Plaintiffs began construction. But Plaintiffs' construction aggravated their neighbors, who challenged Plaintiffs' permit before the Presque Isle Zoning Board of Appeals ("ZBA"). Administrator Lang issued a Stop Work Order on July 13, 2021, which directed Plaintiffs to cease construction until the ZBA resolved the neighbors' appeal. On August 11, 2021, after a two-hour hearing during which Plaintiffs appeared with retained counsel, the ZBA ultimately concluded that Administrator Lang should not have issued Plaintiff's permit because Plaintiffs did not include a series of scaled drawings in their permit application, in violation of Presque Isle's Zoning Ordinance.

But Plaintiffs concede Presque Isle officials helped them secure a new permit almost immediately after the ZBA hearing, and that their initial design plans did not change. Plaintiffs ultimately received a new permit on September 21, 2021, and have seemingly since completed construction. Indeed, Plaintiffs describe the process as "nothing more than" an "annoying[] . . .

paperwork shuffle." ECF No. 21 at PageID.178. Yet Plaintiffs swiftly sued the Township for depriving them of their federal constitutional rights, in violation of 42 U.S.C. § 1983. Specifically, Plaintiffs allege Presque Isle (1) deprived them of their Fourteenth Amendment Due Process rights by issuing a Stop Work Order without any predeprivation process; and (2) did not pay Plaintiffs just compensation for the two-and-a-half month period they were purportedly precluded from building, in violation of the Fifth Amendment Takings Clause.

Both Parties seek summary judgment on Plaintiffs' procedural due process claim, and Defendant seeks summary judgment on the takings claim. As explained below, both claims are precluded as a matter of law. Plaintiffs' motion for partial summary judgment will be denied, and Defendant's motion for summary judgment will be granted.

**I.**

In February 2016, husband-and-wife Plaintiffs James and Kristen Hart purchased a plot of waterfront property on Lake Huron in Presque Isle, Michigan (the "Property").[1] ECF No. 21-3 at PageID.195. Nearly four years after purchasing the Property, Plaintiffs began laying the groundwork for their retirement home: a 7,000 square-foot, three-story structure featuring a "walk-out" basement and stunning views. *See* ECF No. 28-6 at PageID.783–84.

As a "first step" in late 2019, Plaintiffs hired general contractor Kevin Trelfa to assist in the permit process and begin building their estimated $900,000 home. *Id.* at PageID.780, 784. In late 2020, Plaintiffs secured a septic permit, ECF No. 21-4, an electrical permit, ECF No. 21-5, and a building permit, ECF No. 21-6. But this case centers on the fourth permit Plaintiffs received.

---

[1] The Property was seemingly purchased in Plaintiff James Hart's name. *See* ECF Nos. 21-4 at PageID.196; 21-5 at PageID.197; ECF No. 21-7 at PageID.199 *but see* ECF No. 21-6 at PageID.198.

On June or July 2, 2020,[2] Trelfa applied for a land use, or zoning, permit (the "2020 Permit") on Plaintiffs' behalf. ECF Nos. 21-7 at PageID.199; 28-6 at PageID.780. Presque Isle Township Zoning Administrator Seve Lang approved the application and issued the 2020 Permit that same day. *Id.* at PageID.200. Plaintiffs quickly began construction. *See* ECF Nos. 8 at PageID.89 ("The land was excavated, the foundation was poured; walls and roofs were erected; and a substantial portion of the . . . new house had been advanced and installed); No. 21-9 at PageID.202–03.

But construction was interrupted by Plaintiffs' alleged "nightmare neighbors," Michael Beaulac and Mary Wolf.  ECF No. 21 at PageID.174. According to Plaintiffs, Wolf and Beaulac "hated" Plaintiffs because Plaintiffs' construction obstructed their lakefront view. *Id.* In June 2021, Wolf and Beaulac sued Plaintiffs in state court for trespass, nuisance, and other property-based offenses. *See* ECF No. 21-22. The lawsuit was dismissed on the merits in 2023. *See Beaulac v. Hart*, 2021-CZ-3273 (53rd Cir., Presque Isle Cnty., Mich., May 25, 2023).

But the "nightmare neighbors" would not be deterred and sought separate administrative relief. On July 5, 2021, Beaulac filed an "appeal" of Plaintiffs' 2020 Permit with the Presque Isle Zoning Board of Appeals (the "ZBA").[3] ECF No. 21-10. On July 13, 2021, consistent with a stay

---

[2] Kevin Trelfa applied for Plaintiffs' 2020 Permit, and dated his signature on July 2, 2020. *See* ECF No. 21-7 at PageID.199. Steve Lang—the Presque Isle Township Zoning Administrator— signed and approved the 2020 Permit, and confusingly dated his signature on June 2, 2020. *See id.* at PageID.200. All Parties agree that one of the two made a mistake, because the 2020 Permit was approved the same day Plaintiffs' applied. *See* ECF No.21-25 at PageID.335–36.

[3] At the time, Presque Isle's Zoning Ordinance allowed "any person aggrieved" by a Zoning Administration "order, requirement[], decision, or determination" to file an appeal with the ZBA. *See* ECF No. 21-26 at PageID.506. And the then-active Ordinance did *not* include a temporal limitation on this right to appeal, seemingly at odds with Michigan law. *See id;* MICH. COMP. LAWS § 125.3604(2) (requiring zoning boards of appeals to "prescribe[]" the time frame during which aggrieved parties can appeal). Amended in April 2022, the Presque Isle Zoning Ordinance now requires ZBA appeals to be filed within *30 days* of the contested action. PRESQUE ISLE CNTY., MICH. ZONING ORDINANCE § 8.5(A) (2022) ("An appeal shall be taken within thirty (30) days from

provision in Section 28.8(C) of the operative Presque Isle Zoning Ordinance (the "Zoning Ordinance"),[4] *see* ECF No. 21-26 at PageID.506–07, Administrator Lang issued an order directing Plaintiffs to cease construction until the resolution of the ZBA proceedings (the "Stop Work Order"). ECF No. 21-11; *see also* ECF No. 21-25 at PageID.338. Lang concedes that he issued this Stop Work Order without any prior notice or opportunity for Plaintiffs to be heard. *See* ECF No. 21-25 at PageID.339.

Although the July 13, 2021 Stop Work Order directed Plaintiffs to "stop work" without exception, ECF No. 8-4 at PageID.106, Trelfa spent the following "weeks" weather-proofing the Property, ECF No. 28-6 at PageID.787. Moreover, during an August 19, 2021 site visit, Administrator Lang observed the installation of a "pumping and pressure tank," and accordingly issued Plaintiffs a citation for violating the Stop Work Order. ECF No. 28-10.

On August 11, 2021, the ZBA held a two-hour hearing concerning the appeal of Plaintiffs' 2020 Permit. *See* ECF No. 21-14 at PageID.211. Plaintiffs appeared, were represented by retained counsel, and argued the 2020 Permit was properly issued. *See id.* at PageID.212. Members of the public were also invited to comment. *Id.* at PageID.211–12. The ZBA ultimately determined that Administrator Lang should not have issued Plaintiffs' 2020 Permit because Plaintiffs' application did not include "scaled drawing[s]" of, among other things, the "natural features, sewers, [and] topography," of the Property, as required by Section 17.2(B) of the Zoning Ordinance. *Id.* at PageID.212; ECF No. 21-26 at PageID.413–14. Administrator Lang acknowledges that he

---

the date of any written and signed decision (issuance of a zoning permit or issuance of a denial letter) constituting the basis for appeal[.]") Thus, as Plaintiffs emphasize, if Beaulac filed his appeal today, it would be precluded as untimely. *See* ECF No. 21 at PageID.175, n.4.

[4] This "stay" provision remains effective today. PRESQUE ISLE CNTY., MICH. ZONING ORDINANCE § 8.5(D) (2022) (noting, absent some exceptions for "imminent peril of life or property," that "an appeal shall stay all proceedings in furtherance of the action appealed from").

overlooked this provision when approving Plaintiffs' 2020 Permit. ECF No. 21-25 at PageID.337 ("In a hurry, [I] made a mistake.").  Accordingly, the ZBA vacated the 2020 Permit but "indicated this [issue] would fall back to [Administrator] Lang[,]" who could issue a new permit once Plaintiffs submitted the required drawings. ECF No. 21-14 at PageID.213.

On August 23, 2021, consistent with Section 28.12 of the Zoning Ordinance, ECF No. 21-26 at PageID.509, Plaintiffs filed an appeal of the ZBA's decision to revoke the 2020 Permit in state court. *See Hart v. Presque Isle*, Case No. 2021-AA-3279 (53rd Cir., Presque Isle, Mich.); ECF No. 21-20. The same day, Plaintiffs also filed a renewed application with Administrator Lang. *See* ECF Nos. 28-6 at PageID.788; 21-16. Two days later, Administrator Lang sent Plaintiffs a letter informing them that their renewed application still did not include the required scaled drawings and directed them to refile. ECF No. 28-6 at PageID.788–89. Plaintiffs filed their *second* renewed permit application on August 27, 2021. *Id.* at PageID.789. This application was approved, and Administrator Lang issued Plaintiffs a new land use permit on September 21, 2021 (the "2021 Permit"). ECF No. 21-18 at PageID.257. Accordingly, Plaintiffs' state court appeal was dismissed as moot. *See* ECF No. 21-21.

Notably, Plaintiffs did not change any of their original design plans when applying for a renewed permit—the only changes between the 2020 and 2021 permit applications were the scaled drawings Plaintiffs provided in support. *See* ECF No. 21 at PageID.178. And Plaintiffs have seemingly since completed construction. *See* ECF No. 21-19 at PageID.259.

But the alleged damage stems from the journey, not the destination. Despite their home coming to fruition, Plaintiffs allege that they "lost critical building time" between the date the Stop Work Order was issued—July 13, 2021—and the date the 2021 Permit was issued—September 21, 2021. ECF No. 21 at PageID.178. As a result of the Stop Work Order, Plaintiffs allege that

- 5 -

Trelfa "refused to return to the project as the builder" and that Plaintiffs could not secure a new contractor until January 2023. ECF No. 21-19 at PageID.259. This federal constitutional lawsuit followed.

On September 7, 2023, Plaintiffs sued the Township of Presque Isle, alleging two 42 U.S.C. § 1983 claims. ECF No. 1. In Count I of their Amended Complaint,[5] Plaintiffs allege Defendant deprived them of their Fourteenth Amendment due process rights when Lang issued the Stop Work Order without predeprivation process. ECF No. 8 at PageID.93–94. In Count II, Plaintiffs allege Defendant deprived them of their Fifth Amendment rights by "effectuat[ing] a temporary taking" of their property from the time the Stop Work Order was issued "until the time it was lifted." *Id.* at PageID.94–95.

On May 28, 2024, Plaintiffs filed a Motion seeking summary judgment on Count I. ECF No. 21. On July 16, 2024, Defendant filed a cross-motion seeking summary judgment on both Counts I and II. ECF No. 28.

## II.

### A.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying

---

[5] The Amended Complaint includes a third claim against Emily Frechette, ECF No. 8 at PageID.95–96, who has since been voluntarily dismissed. ECF No. 24.

where to look in the record for evidence "which it believes demonstrate[s] the absence of a genuine

issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts

to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the

evidence and draw all reasonable inferences in favor of the non-movant and determine "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When the moving party "also bears the burden of persuasion at trial, [its] 'initial summary

judgment burden is "higher in that it must show that the record contains evidence satisfying the

burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to

disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby*

*Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *Calderone v. United States*, 799 F.2d 254,

259 (6th Cir. 1986) ("[W]here the moving party has the burden—the plaintiff on a claim for relief

or the defendant on an affirmative defense—his showing must be sufficient for the court to hold

that no reasonable trier of fact could find other than for the moving party.") (quoting W. Schwarzer,

*Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D.

465, 487–88 (1984) (emphasis omitted))).

In reviewing cross-motions for summary judgment, courts must apply the proper standard

of review for each motion and may not "treat the case as if it was submitted for final resolution on

a stipulated record." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021)

(quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)); *EMW Women's*

*Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) ("[W]here, as here, the parties

filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its

own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016)) (internal quotation marks omitted)).

### III.

Although Plaintiffs seek summary judgment only on Count I, ECF No. 21, Defendant seeks summary judgment on both Counts I and II, ECF No. 28. Each Count will be addressed in turn, after a brief background of applicable evidentiary requirements.

### A.  Municipal 42 U.S.C. § 1983 Liability

Both Counts I and II allege Defendant violated 42 U.S.C. § 1983, which provides:

> Every *person* who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42  U.S.C. § 1983 (emphasis added).

But, in 1978, the Supreme Court held that municipalities—like Defendant Presque Isle—can be treated as "persons" and subject to § 1983 liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). But a municipality cannot be liable for § 1983 deprivations merely because they employ an officer who deprives someone of their constitutional rights. *Monell*, 326 U.S. at 691. ("[A] municipality cannot be held liable under § 1983 on a respondent superior theory."). Instead, municipalities are only liable under *Monell* for their "official policies" which cause the deprivation of a plaintiff's constitutional rights. *Monell*, 436 U.S. at 692.

Generally, there are four "avenues a plaintiff may take to prove the existence of a [municipal defendant's] illegal policy. The plaintiff can look to (1) the [defendant's] legislative enactments or official agency policies; (2) single actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance

or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). But, even when a plaintiff can show a sufficient official policy, a plaintiff must also "connect the policy to the municipality, and [] show that [the] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 404 (6th Cir. 2010).

Plaintiffs assert multiple theories of *Monell* municipality liability on each of their two constitutional claims. *See* ECF No. 8 at PageID.94–95. But, naturally, Defendant cannot be liable if its officers commit no constitutional violation. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017). So, the analysis of each claim will begin by addressing whether Plaintiffs' constitutional rights were deprived in the first instance. If so—and only if so—this Court will consider whether Defendant is liable as a municipality for the deprivation.

### B. Fourteenth Amendment Procedural Due Process

In Count I, Plaintiffs allege that the 2020 Permit "vested" a property right to build their retirement home, and that the subsequent July 13, 2021 Stop Work Order deprived this vested property right without due process, in violation of the Fourteenth Amendment. ECF No. 8 at PageID.93–94. But Plaintiffs have not shown that the 2020 Permit—which was issued erroneously—vested them with property rights. Nor have Plaintiffs shown that the Stop Work Order—which Plaintiffs at least partially ignored—constituted a deprivation. And, even if the 2020 Permit vested Plaintiffs with property rights, and even if these vested rights were deprived by the Stop Work Order, Plaintiffs received due process.

The Fourteenth Amendment provides "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Procedural due process, "at its core requires notice and an opportunity to be heard 'at a meaningful time and in a

meaningful manner.'" *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012). Each element will be addressed in turn.

## 1.

The first issue is whether Plaintiffs had a property interest. "Whether a person has a 'property' interest is traditionally a question of state law." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Michigan "[c]ourts apply an 'entitlement test' to determine whether plaintiffs have vested property rights under state law, subject to Fourteenth Amendment due process protection." *Mockeridge v. Alcona Cnty. by Bd. of Commissioners*, 696 F. Supp. 3d 303, 324 (E.D. Mich. 2023) (citing *Dorr v. City of Ecorse*, 305 F. App'x 270, 275 (6th Cir. 2008)). But the "key inquiry in determining whether a property right has vested is possession of a *valid* building permit coupled with substantial reliance and actual construction." *Id.* (internal quotations omitted and emphasis added); *Dorr v. City of Ecorse*, 305 F. App'x 270, 275 (6th Cir. 2008) ("Under Michigan law, it is well established that possession of a *valid* permit coupled with substantial reliance thereon, including actual construction, will bestow vested property rights to a non-conforming structure." (emphasis added)).

Plaintiffs indisputably relied on the 2020 Permit and began construction soon after it was issued. *See* ECF No. 28-6 at PageID.783. But Plaintiffs do not dispute the ZBA's conclusion that the 2020 Permit was erroneously issued because Administrator Lang overlooked Plaintiffs' initial

application, which did not include specific scaled drawings required by the Zoning Ordinance. *See generally* ECF Nos. 21; 27; 30. So is an erroneously issued permit nevertheless a *valid* one?

Plaintiffs think so and cite *Pittsfield Twp. v. Malcolm*, 375 N.W.2d 166 (Mich. 1965) in support. ECF No. 21 at PageID.182 ("The doctrine applies even if the government was mistaken in issuing the legal clearance.") But *Pittsfield* had nothing to do with vested rights nor procedural due process. In *Pittsfield*, a Township of Pittsfield official told two property owners that they could construct a kennel on their property without running afoul of local zoning ordinances. *Pittsfield*, 375 N.W. 2d at 137.  The property owners received a permit and quickly constructed their kennel. *Id.* Nearly a year later, the township sued the property owners, alleged the permit was erroneously issued because the property was located in a zone that did not allow the construction of animal kennels, and accordingly sought a permanent injunction prohibiting the kennel. *Id.* But the Michigan Supreme Court denied this injunction under the doctrine of equitable estoppel because the property owners posted notice of their kennel in a newspaper and the township waited over 10 months "after construction, occupancy, and operation before challenging defendants' right to continue using the building as an animal kennel." *Id.* at 148 (noting these "exceptional circumstances" presented "compelling reasons" to refuse the township's injunction).

Defendant's briefing on this point fares no better. Without citing any legal authority, Defendant argues that Plaintiffs' 2020 Permit was invalid because it was erroneously issued. ECF No. 26 at PageID.612, 625–26. But the answer is less clear.

A property owner undoubtedly has "every reason and right to rely" on "*valid* permit[s]" issued by their municipality. *See Dingeman Advert., Inc. v. Algoma Twp., Kent Cnty.*, 223 N.W.2d 689, 691 (Mich. 1974) (emphasis added). "After all, he has within his possession an official document of the local community authorizing him to proceed with his contemplated project." *Id.*

From the property owner's perspective, it is hard to see how this right is undermined when an official permit is issued in error, especially when—like here—the property owner does not know about the error until *after* they constructed in reliance, and has far less knowledge of zoning requirements than the issuing official. But some Michigan precedent suggests a contrary conclusion.

In *Beeman v. Michigan Bd. of Pharmacy*, pharmacists sued the Michigan Board of Pharmacy after the Board revoked their erroneously issued certificates to practice. 35 N.W.2d 354, 355–56 (Mich. 1949). The pharmacist plaintiffs claimed their certificates, despite being erroneously issued, nevertheless gave them a "vested property right to practice as pharmacists[.]" *Id.* at 357. But the Michigan Supreme Court rejected this claim, holding the pharmacists "could not have not and did not acquire vested rights in consequence of there having been issued to them certificates of registration in violation of the law." *Id.*

Like the certificates in *Breeman*, the 2020 Permit was issued contrary to applicable law. The Zoning Ordinance expressly provided that "no building . . . shall be allowed to be . . . constructed . . . unless it is in conformance with this ordinance, and a zoning permit has been obtained." ECF No. 21-26 at PageID.381. And the Zoning Ordinance further required Plaintiffs to include in their permit application "scaled ground plans" or "drawings" of, among other things:

1. The boundary lines of the parcel,
2. The location and size of all present and proposed structures,
3. The "general location and information regarding significant natural features existing on the site[,]"
4. The "[p]roposed method of providing water and sanitary service[s]" to the site
5. "Existing and proposed topography of the site[,]" and
6. "Any other information . . . unique to the site or . . . proposal" such as "front and side elevations[.]"

*Id.* at PageID.413–14. Plaintiffs concede that the scaled drawing attached to their initial permit application did not comply with the Zoning Ordinance. ECF No. 26-3 at PageID.663; *see also* ECF

No. 21-8 at PageID.201. *Breeman* suggests this noncompliance invalidates the 2020 Permit, such that the 2020 Permit cannot vest Plaintiffs with a property right for procedural due process purposes.[6]

## 2.

Assuming the 2020 Permit vested Plaintiffs with a property right to build their home, was this right *deprived* when Administrator Lang issued the Stop Work Order? This answer is also less than clear.

True, the July 13, 2021 Stop Work Order purported to pause construction as the ZBA appeal was pending. *See* ECF No. 21-11 *but see* ECF No. 28-6 at PageID.787 (admitting Plaintiffs continued construction); ECF No. 28-10 (citing Plaintiffs for violating the Stop Work Order). But, after the ZBA concluded Plaintiffs' 2020 Permit was issued erroneously, Plaintiffs secured a new permit on September 21, 2021. *See* ECF No. 21-18. So, whatever vested property right Plaintiffs may have had, this right was paused for two-and-a-half months. Although this Court does not suggest that a two-and-a-half-month delay is trivial, there is an important distinction between *temporary, non-final* interferences—like stop work orders—and *permanent, final* ones—like

---

[6] Although Michigan law on this point is somewhat unclear, the law in several other states would preclude Plaintiffs' 2020 Permit from vesting any property right, because Plaintiffs did not comply with applicable requirements, and the 2020 Permit was issued in error. *See, e.g.*, *Rockville Cars, LLC v. Rockville*, 891 F.3d 141, 147 (4th Cir. 2018) (collecting cases and noting that—under Maryland, Alabama, and Minnesota law—erroneously issued building permits cannot vest property rights); *Gottlieb v. Vill. of Irvington*, 69 F. Supp. 2d 553, 556 (S.D.N.Y. 1999) ("New York Courts have repeatedly held that a landowner does not have a vested property right to a building permit issued erroneously."); *Summerchase Ltd. P'ship I v. City of Gonzales*, 970 F. Supp. 522, 534 (M.D. La. 1997) ("Since the [municipality] was right to revoke the permit because it was erroneously issued, [plaintiff] has no vested property interest in the permit."); *Fernandes v. City of Jersey City*, No. 2:16-CV-07789-KM-JBC, 2017 WL 2799698, at *7 (D.N.J. June 27, 2017) ("The legitimacy of entitlement, in instances relating to denial of building or other municipal permits, is based on whether plaintiffs have complied with all legal requirements contained in the local codes or ordinances." (internal quotations omitted));

permit revocation. The Sixth Circuit recognizes this distinction in due process cases. *See, e.g.*, *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 469 (6th Cir. 2008) ("This Court has held that the holder of a building or zoning permit has a constitutionally protected interest and is therefore entitled to proper proceedings prior to a *final determination* regarding revocation." (emphasis added)); *Paeth v. Worth Twp.*, 483 F. App'x 956, 692 (6th Cir. 2012) (describing stop work order as a "[t]emporary inconvenience"). Other federal courts recognize this distinction, too. *See, e.g.*, *Henniger v. Pinellas Cnty.*, 7 F. Supp. 2d 1334, 1338 (M.D. Fla. 1998) (dismissing procedural due process claim predicated on a stop work order because "the order on its face allows for the resumption of work upon clearance"); *Gottlieb v. Vill. of Irvington*, 69 F. Supp. 2d 553, 556 (S.D.N.Y. 1999) (describing a stop work order as a "temporary interference").

Plaintiffs do not challenge the ZBA's ultimate, *final* decision to revoke Plaintiffs' 2020 Permit—which was accompanied by adequate process, including notice via the Stop Work Order, ECF No. 21-11, a hearing during which counsel represented Plaintiffs, ECF No. 21-14, and post-deprivations remedies including legal appeals and multiple administrative opportunities to file renewed permit applications, ECF Nos. 21-18; 21-20; 21-21. Instead, Plaintiffs move the goalposts and "apparently want the Court to equate [the July 13, 2021 Stop Work Order] with a denial or revocation of" their 2020 Permit altogether. *Gottlieb*, 69 F. Supp. 2d at 556. But "[t]hose two things cannot be equated." *Id.*; *see also Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 367 (S.D.N.Y. 2014) (noting the property interest vested by a permit is not deprived until and unless the permit is revoked); *Tri Cnty. Indus., Inc. v. D.C.*, 104 F.3d 455, 458 (D.C. Cir. 1997) (rejecting procedural due process claim because no authority supported the proposition that a property interest conveyed by a permit is "deprive[d]" by something less than revocation).

Moreover, to the extent the Stop Work Order could have deprived Plaintiffs' purported property rights, any deprivation is seemingly mitigated by Plaintiffs insistence on continuing construction. Despite the July 13, 2021 Stop Work Order instructing Plaintiffs to cease all construction, Plaintiffs admitted that they continued to work on their property for *weeks* into the two-and-a-half month period between the issuance of the Stop Work Order and the 2021 Permit. *See* ECF No. 28-6 at PageID.787. Indeed, nearly one month after receiving the Stop Work Order, Plaintiffs were cited for violating it by installing pressure tanks on their Property. ECF No. 28-10. True, Plaintiffs allege that the Stop Work Order otherwise halted their construction, which in turn caused their contractor to abandon ship. ECF No. 21 at PageID.178. But, at least to some extent, Plaintiffs' allegation that they "lost critical building time" is undercut by these undisputed facts. *See id*.

Neither Party addresses whether, or to what extent, Plaintiffs' work undermines their claim that the Stop Work Order deprived them of property rights, *see generally* ECF Nos. 21; 28, but nonbinding precedent suggests Plaintiffs' work may be preclusive. *See Oray v. City of Farmington Hills*, No. 321440, 2014 WL 7157648, at *3 (Mich. Ct. App. Dec. 16, 2014) (denying procedural due process claim when plaintiffs "continued to work on the project" after the challenged stop work order was issued); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 366 (7th Cir. 2019) (finding stop work order "could not have deprived" plaintiff of property because plaintiff did not stop work in response); *Boczar v. Kingen*, No. IP 99-0141-C-T/G, 2000 WL 1137713, at *23 (S.D. Ind. Mar. 9, 2000), *aff'd*, 6 F. App'x 471 (7th Cir. 2001) (finding stop work order "did not deprive" plaintiffs of an assumed right to temporarily use their home because plaintiffs "ma[d]e their residence weather tight" even after the stop work order was issued).

Plaintiffs allege that the July 13, 2021 Stop Work Order deprived them of vested property rights. But the Stop Work Order was a temporary interference. And, at least to some extent, Plaintiffs continued to work on their Property after the Stop Work Order was issued. So, even assuming Plaintiffs had a vested property right, they have not shown this right was ever deprived as a matter of law.

### 3.

¡     Yet even assuming (1) the 2020 Permit vested Plaintiffs with a property right, and (2) the July 13, 2021 Stop Work Order deprived this right, Defendant afforded Plaintiffs constitutionally adequate process.

The Supreme Court has routinely recognized that due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). When assessing the adequacy of process provided to an individual deprived of their legitimate property interest in a particular case, courts consider (1) the private interest affected by the government action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government interest, including the fiscal or administrative burdens that the additional or substitute procedural requirements would entail. *Id.* (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As a threshold issue, Plaintiffs argue that "[p]rocedural due process requires, at a minimum, that, prior to depriving an individual of a property right, the government must provide the affected individual with notice . . . and a meaningful opportunity" to be heard. ECF No. 21 at PageID.180 (emphasis omitted). In other words, Plaintiffs argue that Defendant's process was constitutionally inadequate precisely because it did not include any *predeprivation* hearing or notice. But this argument ignores the flexibility of the due process doctrine, and has been rejected by numerous

courts. True, to Plaintiffs' point, the Supreme Court has emphasized that due process "*usually . . . . requires some kind of*" predeprivation notice or hearing. *Zinermon*, 494 U.S. at 127 (emphasis added). But, "[i]n some circumstances," *postdeprivation* process may suffice. *Id*. at 128; *see also Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 470 (6th Cir. 2008). The circumstances of this case fall in the latter category, not the former.

Plaintiffs cite two out-of-circuit cases and argue to the contrary, that *some* pre-deprivation process is required before an individual is "*finally* deprived of a property interest." ECF No. 30 at PageID.861–62 (citing *Rebirth Christian Acad. Daycare, Inc. v. Brizzi*, 835 F.3d 742, 749 (7th Cir. 2016) and *Lawrence v. Reed*, 406 F.3d 1224, 1233 (10th Cir. 2005)). But Plaintiffs' argument rests on a faulty premise. As discussed above, the July 13, 2021 Stop Work Order did *not*—as both a matter of fact and law—*finally* deprive Plaintiffs of their purported property interest. ECF Nos. 21-11 at PageID.208. The ZBA's August decision to *revoke* the 2020 Permit did.[7] Unlike the ZBA's final decision to revoke, the Stop Work Order directed Plaintiffs to cease construction only "*until such time as the [ZBA] make[s] a determination*" resolving the filed appeal. ECF No. 21-11 (emphasis added); *see also* ECF No. 30 at PageID.860 (describing the stop work order as a "deprivation . . . that *later became permanent*" (emphasis added); *Paeth*, 483 F. App'x 956, 692

---

[7] Again, Plaintiffs do not dispute that the ZBA's ultimate, *final*, decision to revoke the 2020 Permit was preceded and proceeded by a plethora of process. Nor could they. Plaintiffs were notified that their 2020 Permit was the subject of an appeal. ECF No. 21-11. Plaintiffs were invited to and attended a two-hour hearing during which they—through retained counsel—had a meaningful opportunity to be heard. ECF No. 21-14. And Plaintiffs were additionally afforded—and availed themselves of—the postdeprivation opportunity to appeal the ZBA's revocation of their erroneously issued 2020 Permit in state court. ECF No. 21-26 at PageID.509; ECF No. 21-20; 21-21. Notably, federal courts have dismissed procedural due process claims in similar situations. *See Henniger v. Pinellas Cnty*., 7 F. Supp. 2d 1334, 1338 (M.D. Fla. 1998) ("Plaintiff has not alleged that the state failed to provide her with administrative and judicial remedies *after* the stop work order was issued. Therefore this Cour finds that even when viewing the record in the light most favorable to the Plaintiff, she is unable to raise a genuine issue of material fact which would . . . support a § 1983 claim on procedural due process grounds.").

(6th Cir. 2012) (describing stop work order as a "[t]emporary inconvenience"); *Gottlieb*, 69 F. Supp. 2d at 556 (same); *Henniger*, 7 F. Supp. 2d at 1338 (dismissing procedural due process claim predicated on a stop work order because "the order on its face allows for the resumption of work upon clearance"). Indeed, Plaintiffs do not identify a single case standing for the specific proposition that the government must provide process *before* issuing a stop work order, as opposed to the subsequent final decision to revoke a permit. *See* ECF Nos. 21; 27; 30. They would have a hard time doing so, because—applying *Matthews v. Eldridge*—the Sixth Circuit, this Court, and numerous federal courts across the country have squarely held the opposite.

Take the Sixth Circuit's 2012 decision *Paeth v. Worth Township*, 483 F. App'x 956 (6th Cir. 2012).[8] In *Paeth*, plaintiffs purchased a home and promptly obtained a permit to renovate it. *Id.* at 959. Years later, Worth Township officials discovered plaintiffs' permit was issued in error because their house did not comply with applicable setback requirements. *Id.* The plaintiffs' application for a variance was initially denied by their local ZBA but was ultimately granted after a state circuit court reversal. *Id.* at 960. Nevertheless, the Township maintained that the plaintiffs needed a new permit and accordingly—without prior notice or opportunity to be heard—issued a stop work order, which paused the plaintiffs' construction for over a month. *Id.* The plaintiffs sued the Township alleging, among other claims, the very argument Plaintiffs make here: that the

---

[8] Plaintiffs argue that *Paeth* "makes no sense" and "must be rejected as wrongly decided" because the Sixth Circuit overlooked that, however little weight a property interest may have, it must be afforded "some kind of" process before it is deprived. ECF No. 30 at PageID.858–59, *id.* at PageID.859, n. 10. But the Sixth Circuit made no such error. It considered the *postdeprivation* process available to the plaintiffs. *Paeth*, 483 F. App'x, 962–63. On this point, Plaintiffs cite a string of cases all standing for the proposition that due process requires "some kind of [*predeprivation*] hearing" before an individual is *finally* deprived of their property interest." ECF No. 30 at PageID.859, n. 10. But, again, this argument rests on a faulty assumption that the July 13, 2021 Stop Work Order was a *final* deprivation, let alone a deprivation in the first instance. *See supra* Section III.B.2.

Township violated their procedural due process rights by "issu[ing] the stop work order without notice or an opportunity to respond." *Id.* After trial, the jury concluded that the plaintiffs "had a property interest in the continued construction on their home" and found this right was deprived by the stop work order without adequate process. *Id.* at 960–61. But the Sixth Circuit reversed on appeal.

Notably, the Sixth Circuit assumed—without deciding—that the plaintiffs' permit vested a property right in continued construction and further assumed this right was deprived by the stop work order. *Id.* at 961. But after applying the three *Matthews v. Eldredge* factors, the Court concluded that the plaintiffs' "constitutional rights were not violated by the posting of the stop work order without notice" because (1) the plaintiffs' interest in continued construction was "not an extremely weighty one," (2) plaintiffs were afforded a "speedy post-deprivation review" which minimized risks of erroneous deprivations, and (3) evidence discovered after the permit was issued suggested "the house was not compliant" with applicable codes and ordinances, such that "[t]he Township . . . had an interest in preventing *any* further work from taking place until such concerns could be addressed." *Id.* at 961–62 (emphasis in original).

Or take *Daley v. Charter Township*, No. 11-12562, 2012 WL 1721671 (E.D. Mich. May 16, 2012). The *Daley* plaintiff wanted to build a coin laundry business but received two stop work orders throughout the construction process for constructing outside the scope of issued permits and for failing to pay applicable water and sewer tap fees. *Id.* at *7–13. The plaintiff sued the Township and alleged that the stop work orders—issued without predeprivation notice or an opportunity to be heard—violated his Fourteenth Amendment procedural due process rights. *Id.* at *14. This Court disagreed. This Court noted that the lack of notice and opportunity to be heard "before posting the . . . stop work order d[id] *nothing* to establish [the p]laintiff's procedural due process

claims," in part because the stop work orders were, in themselves, notice that plaintiff was violating applicable ordinances, and zoning officials need not provide "'notice as a precondition of notice.'" *Id.* at *16 (citing *Hussein v. City of Perrysburg*, 617 F.3d 828, 832 (6th Cir.2010) (finding no procedural due process violation where a stop work order was in effect precluding construction but plaintiffs proceeded to lay asphalt on their driveway and city officials ordered the contractor to stop and threatened litigation)).

Lastly, consider *3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068 (D.C. Cir. 2003)). In that case, the plaintiff sought to build a nine-story apartment building and received preliminary permits to do so. *Id.* at 1069. But District of Columbia officials discovered "discrepancies" in the environmental statements submitted in the plaintiff's permit applications and accordingly issued a stop work order requiring the plaintiff to cease all construction until "compliance . . . [could] be confirmed." *Id.* at 1070. The District rescinded the stop work order four months later, but the plaintiff still sued the District, alleging the stop work order—issued without predeprivation process—violated his Fourteenth Amendment rights. *See id.* at 1069. The D.C. Circuit rejected this claim because, although the plaintiff had a "substantial interest in the continued effect of the permit," the government had an even more "significant interest in maintaining its capability to act swiftly to bring an immediate halt to construction" carried out contrary to state law which may "pose a threat to public health and safety or the environment." *Id.* at 1074. And, like here, the District of Columbia's postdeprivation process of an expedited hearing and subsequent appeals minimized the risk of erroneous deprivations. *Id.*

Collectively, these cases trounce Plaintiffs' repetitive argument that Defendant was required to afford "some kind" of process *before* issuing the July 13, 2021 Stop Work Order. And applying the *Matthew v. Eldridge* factors, the process Defendant provided *after* issuing the Stop

Work Order was constitutionally adequate. Whatever interest Plaintiffs had in continuing construction, this interest is significantly outweighed by Defendant's interest in swiftly stopping construction authorized by a permit issued contrary to its Zoning Ordinance. *See Paeth*, 482 F. App'x at 962; *3883 Connecticut*, 336 F.3d at 1074. And the process Defendant provided—albeit postdeprivation—minimized the risk of erroneous deprivations. Defendant provided a two-hour ZBA hearing concerning the validity of the 2020 Permit, approximately one month after Administrator Lang issued the Stop Work Order. *See* ECF No. 21-14. Plaintiffs attended this hearing and—through retained counsel—had a meaningful opportunity to contest the Stop Work Order and defend their 2020 Permit. *Id.* Plaintiffs were additionally afforded—and availed themselves of—the opportunity to appeal the ZBA's revocation in state court. ECF No. 21-26 at PageID.509; ECF No. 21-20; 21-21. But this judicial process was ultimately unnecessary because Defendant issued Plaintiffs the 2021 Permit after Administrator Lang assisted Plaintiffs in filing not one, but two, renewed permit applications. *See* ECF Nos. 21-18; 28-6 at PageID.787.

So, at bottom, even assuming Plaintiffs had a vested property right, and even assuming the July 13, 2021 Stop Work Order deprived this property right, Defendant provided Plaintiff with due process. Because Plaintiffs' procedural due process rights were not deprived, this Court need not consider whether Defendant is liable as a municipality under *Monell*.[9] Plaintiffs' Motion for Partial

---

[9] If Plaintiffs' procedural due process rights were deprived by the Stop Work Order—they were not—Plaintiffs would likely succeed on their *Monell* claim, under at least two theories of liability. First, Administrator Lang testified during his deposition Defendant does not provide its officials with *any* training or education on (1) how to interpret and apply the Zoning Ordinance, (2) property rights under Michigan law, or (3) "the appropriate level of type of due process that's owed" to citizens under the United States Constitution. ECF No. 21-25 at PageID.340, 342. Indeed, Lang testified that, before this lawsuit was filed, he had never "even heard about the concept . . . of procedural due process." *Id.* at PageID.340. A municipal defendant's "failure to provide *any* training on key duties with direct impact on the constitutional rights of citizens" is strong, if not dispositive, evidence that the defendant is liable for its employees' deprivations under a failure-to-train theory of *Monell* liability. *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006)

Summary Judgment will be denied, and Defendant's Motion for Summary Judgment will be granted to the extent it seeks summary judgment on Count I.

## C.  Fifth Amendment Temporary Taking

In Count II, Plaintiffs allege that the Stop Work Order constituted a "temporary taking" and that Defendant did not pay Plaintiffs "just compensation" for the time they were instructed to cease construction, in violation of the Fifth Amendment. ECF No. 8 at PageID.95–96.

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *see Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897), provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. Indeed, this Clause is designed "not to limit the governmental inferences with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference accounting to a taking."[10] *First English Evangelical Lutheran Church v. Los Angeles Cnty.*, 482 U.S. 304, 315 (1987) (emphasis in original). This Clause was intended to prevent the Government from "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005); *see*

---

(emphasis in original); *see also Mockeridge v. Alcona Cnty. by Bd. of Commissioners*, 696 F. Supp. 3d 303, 344 (E.D. Mich. 2023) (denying defendant's motion for summary judgment because its zoning administrator testified that he received no training to understand obligations under the federal or state constitution and did not know that he had any legal obligations under state or federal law). Moreover, under a custom theory of *Monell* liability, Lang agreed Defendant had an "established policy" to "always" issue a stop work order when someone challenges a permit before the ZBA. ECF No. 21-25 at PageID.341. And, consistent with this custom, Lang testified that he issued a stop work order on each such occasion throughout his career. *Id.*

[10] In temporary taking cases such as this, the "measure of just compensation . . . is the fair rental value of the property for the period of the taking." *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1581 (Fed. Cir. 1990) (citing *Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949)). But Plaintiffs Property remained unfinished throughout the entirety of the alleged "taking period," so it remains entirely unclear what, if any, "rental value" the Property had throughout this period.

*also Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978); *Armstrong v. United States*, 364 U.S. 40, 49 (1960); *Monongahela Nav. Co. v. United States*, 148 U.S. 312, 325 (1893).

"The Supreme Court has noted the 'considerable difficulty' in answering the question of what constitutes a 'taking' for the purposes of the Fifth Amendment." *Novak v. Federspiel*, 728 F. Supp. 3d 552, 567 (E.D. Mich. 2024) (quoting *Penn Cent. Transp.*, 438 U.S. at 123). But physical—as opposed to regulatory—takings are often clear. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021) ("These sorts of physical appropriations constitute the clearest sort of taking[.]" (internal quotations omitted)). A physical taking occurs when the government (1) "uses its power of eminent domain to formally condemn property," (2) "physically takes possession of property without acquiring title to it," or (3) occupies it. *Id*. at 147–48. Regardless of form, "[w]hen the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *Id*. at 147, 141 (citing *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321, (2002)).

The relevant material facts are not disputed. Defendant did not condemn Plaintiffs' Property. Defendant did not take physical possession of Plaintiffs' Property. Defendant did not occupy Plaintiffs' Property. Accordingly, the Stop Work Order did not result in a physical taking. *See Anderson v. Richards*, No. 2:21-CV-00726-DBB-DBP, 2023 WL 4579281, at *6 (D. Utah July 18, 2023), *aff'd*, No. 23-4132, 2024 WL 3885478 (10th Cir. Aug. 19, 2024) (concluding stop work order is not a physical taking). Plaintiffs do not argue otherwise, and instead argue that the Stop Work Order was a temporary, regulatory taking. *See* ECF No. 30 at PageID.863–65.

Regulatory takings come in two forms. First, although rare, *per se* or *categorical* regulatory takings occur when regulation or governmental action either (1) "requires an owner to suffer a

"permanent physical invasion of her property" or (2) "completely deprives an owner of '*all*

*economically beneficial us[e]*' of her property." *Lingle*, 544 U.S. at 538 (quoting *Lucas v. S.C.*

*Coastal Council*, 505 U.S. 1003, 1019 (1992) (emphasis in original)). Plaintiffs do not dispute that

neither form of categorical regulatory taking exists here. *See* ECF No. 30.

"Outside these two relatively narrow categories . . . regulatory challenges are governed by

the standards set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 (1978)."

*Lingle*, 544 U.S. at 538; *see also Tahoe-Sierra*, 535 U.S. at 330–31 (noting courts should use the

*Penn Central* test to analyze alleged temporary takings). These relevant *Penn Central* factors

include:

(1) The "economic impact" of the regulation on the plaintiff and, particularly, the
    extent to which the regulation interfered with the plaintiff's "distinct investment
    backed expectations," and
(2) "The character of the governmental action," including the severity, duration,
    and purpose of the intrusion.

*Penn Central*, 438 U.S. at 124; *see also Bruneau v. Michigan Dep't of Env't*, 104 F.4th 972, 975

(6th Cir. 2024). Applied to this case, the *Penn Central* factors preclude Plaintiffs' temporary

takings claim.

**1.**

To assess the first *Penn Central* factor—economic impact—courts "compare the value that

has been taken from the property with the value that remains in the property[.]" K*eystone*

*Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987). But Plaintiffs have given this

Court nothing to compare.

The closest Plaintiffs get to identifying economic impact is conclusively alleging in a sworn

affidavit that, during the alleged taking period, they "lost critical building time" and were forced

to find another contractor to complete construction. ECF No. 30 at PageID.853; *see also* ECF No.

21 at PageID.259. Relatedly, Plaintiffs also argue they could not complete unspecified "key work" before "winter in northern Michigan set[] in." *Id.* But, in the same breath, Plaintiffs concede that Defendant allowed them to winterize their Property after the Stop Work Order was issued. ECF No. 28-6 at PageID.786–87 (agreeing Defendant allowed Plaintiffs to work for "weeks" after the Stop Work Order to prevent "any damage" until the ZBA appeal was resolved). Plaintiffs have also wholly failed to articulate—let alone show—any "distinct investment backed expectation" that the Stop Work Order allegedly extinguished. This Court is not suggesting that the Stop Work Order had *no* economic impact on Plaintiffs' Property or investments. But, in response to Defendant's motion for summary judgment, Plaintiffs have the burden to set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). Plaintiffs have not done so. *See Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir.2003) ("Conclusory allegations . . . and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment.").

### 2.

Turning to the second *Penn Central* factor, the undisputed facts reveal Defendant's intrusion was relatively minor. *See S. Grande View Dev. Co., Inc. v. Alabaster*, 1 F.4th 1299, 1311 (11th Cir. 2021) (noting the second *Penn Central* factor is "another way to examine the severity of the government interference with property rights").

First, the duration of Defendant's intrusion was not excessive and was, at least in part, attributable to Plaintiffs. True, Plaintiffs were—in theory—prevented from continuing construction from July 13 through September 21, 2021. *See supra* Part I (describing how Plaintiffs continued to work after Lang issued the Stop Work Order). But "no categorical rule establishes how long governmental action must preclude use of property before a taking occurs," *David Hill*

*Dev., LLC v. Forest Grove*, No. 3:08-CV-266-AC, 2012 WL 5381555, at *17 (D. Or. Oct. 30, 2012) (citing *Tahoe-Sierra*, 535 U.S. at 335), and Courts have rejected takings claims predicated on longer intrusions. *See*, *e.g.*, *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) (finding no temporary taking despite eight-year delay); *Wyatt v. United States*, 271 F.3d 1090 (Fed.Cir.2001) (same for seven-year delay); *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764 (9th Cir.2000) (same for forty-month delay); *3883 Connecticut LLC*, 336 F.3d at 1070 (same for four-month delay). Moreover, at least some of the two-and-a-half-month delay is attributable to the Plaintiffs, whose first renewed permit application did not correct the drawing deficiencies Administrator Lang and the ZBA identified. ECF No. 28-6 at PageID.788–89; *see also David Hill*, 2012 WL 5381555 (noting courts should assess "the reasons for the delay and whether the delay is proportionate to the nature of the government process"); *Wyatt v. United States*, 271 F.3d 1090, 1098 (Fed.Cir.2001) (noting "delay is inherent in complex regulatory . . . schemes" so courts "must examine the nature of the . . . process as well as the reasons for any delay").

Second, the intrusiveness of the Stop Work Order is undermined by the fact that it was warranted and issued in good faith. Plaintiffs do not dispute that their application for the 2020 Permit did not comply with the Zoning Ordinance because it did not include required scaled drawings. *See generally* ECF Nos. 28-6 at PageID.787–88; 21; 30. Courts have found stop work orders or permit revocation to be significantly intrusive, constituting a taking, when they were unwarranted or based on incorrect interpretations of local zoning ordinances. *See*, *e.g.*, *Bordelon v. Baldwin Cnty.*, No. CV 20-0057-C, 2022 WL 16543269, at *25 (S.D. Ala. Oct. 28, 2022), *aff'd* No. 22-13958, 2024 WL 302382 (11th Cir. Jan. 26, 2024), *cert. denied*, No. 23-1337, 2024 WL 4426683 (U.S. Oct. 7, 2024) (finding significant government intrusion because the "Zoning

Ordinance provided no basis" for defendant to revoke or deny plaintiff's land use certificate). In contrast, Plaintiffs' 2020 Permit should have never been issued, and Defendant had a significant interest in halting construction carried out contrary to its own Zoning Ordinance. *See* ECF No. 21-26 at PageID.381 (prohibiting construction in violation of the Zoning Ordinance), PageID.413–14 (requiring scaled drawing).

"Finally, the [Stop Work Order] and eventual revocation of" Plaintiffs' 2020 Permit cannot be characterized as a Fifth Amendment taking because Defendant  "was not acquiring resources to 'facilitate a uniquely public function.'" *Friedman v. City of Fairfax*, No. 24-CV-00371-DMR, 2024 WL 3925729, at *9 (N.D. Cal. Aug. 23, 2024) (citing *Penn Central*, 438 U.S. at 128). Defendant "did not attempt to acquire or use any part of Plaintiff[s'] property for a public function." *Id.* Plaintiffs do not argue otherwise, and nothing in the record—even when construed in Plaintiffs' favor—suggests that the Stop Work Order was issued "for public use," as required by the express terms of the Takings Clause. *See* U.S. CONST. amend. V.

Plaintiffs cite *one case* in support of their taking claim: *Kalkman v. City of Vill. of Douglas*, No. 306051, 2012 WL 4215834 (Mich. Ct. App. Sept. 20, 2012). ECF No. 30 at PageID.863–66. And Plaintiffs are not shy that this unpublished, nonbinding, state court case is the "base[]" of their takings claim. *Id.* at PageID.863. But, in *Kalkman*—which found that a stop work order constituted a temporary taking—the Governmental intrusion was more severe than here. There, the property owner was forced to abandon construction for nearly *two years*. *See Kalkman*, 2012 WL 4215834, at *1 (noting defendant issued stop work order in July 2007); *id.* at *6 (noting trial court estopped defendant from enforcing the stop work order in March 2009). Here, Plaintiffs were told to—but did not fully—abandon construction for just over *two months*. ECF Nos. 21-25 at PageID.338; 28-6 at PageID.788. There, the permit was erroneously *rescinded* because the municipal defendant

incorrectly interpreted its own zoning ordinance. *Kalkman*, 2012 WL 4215834, at *1. Here, Plaintiffs' 2020 Permit was erroneously *granted* because Plaintiff did not comply with the applicable Zoning Ordinance. *See* ECF No. 21-14 at PageID.212. In other words, as discussed above, unlike in *Kalkman*, where the city's stop work order was wholly unwarranted and issued in bad faith, the Stop Work Order here was found necessary to enforce Defendant's Zoning Ordinance.

The undisputed material facts preclude Plaintiffs' Fifth Amendment temporary takings claim. Defendant is accordingly entitled to summary judgment on Count II.

## VI.

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, ECF No. 21, is **DENIED.**

Further, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 28, is **GRANTED.**

Further, it is **ORDERED** that Plaintiffs' Amended Complaint, ECF No. 8, is **DISMISSED WITH PREJUDICE.**

**This is a final order and closes the above-captioned case.**

Dated: December 30, 2024                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge